**Law Offices of Anne Donnelly Bush**
**Anne Donnelly Bush, Esq. (AD5486)**
43 West 43rd Street, Suite 117
New York, New York 10036-7424
Tel: (914) 239 3601
Fax: (914) 219 3145
adblaw@annedonnellybush.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x          Index No.:

TONY SPIRES,

                                        Plaintiff,

         -against -                                              **COMPLAINT**
                                                                **and Jury Demand**

METLIFE GROUP, Inc., TOM LUCKEY,
Individually, DOUGLAS RAYVID, Individually,
and RICARDO ANZALDUA,
Individually

                                        Defendants.

-------------------------------------------------------------x

         Plaintiff Tony Spires ("Plaintiff" or "Mr. Spires"), by his attorney, Anne Donnelly Bush,

complains of the Defendants MetLife group, Inc., ("MetLife"), Tom Luckey ("Luckey"),

Douglas Rayvid ("Rayvid") and Ricardo Anzaldua ("Anzaldua"), as follows:

                              **PRELIMINARY STATEMENT**

1.       Plaintiff brings this action for race discrimination, age discrimination, retaliation, failure

to promote, constructive discharge and unequal pay, pursuant to  42 U.S.C. § 1981 ("Section

1981"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. **§§**. 621 et

seq. (the "ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e,

*et seq.* ("Title VII"), New York State Human Rights Law, Executive Law §290, *et  seq.* ("SHLR"),

the New York City Human Rights Law, §8-107, *et seq.* of the Administrative  Code ("CHRL"),

and the Lilly Ledbetter Fair Pay Act of 2009 (Fair Pay Act).

2.       Plaintiff also brings an action under Tort law for the Intentional Infliction of Emotional

Distress.

## JURISDICTION

3.      Jurisdiction is conferred upon the Court by 28 U.S.C. §1331, §1343 and/or 41 U.S.C.

§2000e-5(f)(3).

## VENUE

4.      Venue lies in the Southern District of New York in that the unlawful actions complained

of and the records relevant to such practices are maintained and administered within this district.

5.      All conditions precedent to the institution of this suit have been satisfied.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      On December 7, 2016, Plaintiff filed a Complaint with the United States Equal

Employment Opportunity Commission, ("EEOC") under charge number 520-2017-00763.

7.      These filings satisfied the requirements of 42 U.S.C. s 2000c-5. The complaint charged

race discrimination, age discrimination, retaliation, failure to promote/hire, constructive discharge

and unequal pay, against Defendants. These filings were within 300 days after one or more

occurrences of Defendant's discriminatory conduct against Plaintiff.

8.      On February 26, 2018, the EEOC issued Plaintiff a 90 day Notice of Right to Sue. Copy

attached. Plaintiff files this action within ninety (90) days of receipt of same.

## PARTIES

9.      Plaintiff Tony Spires ("Plaintiff" or "Mr. Spires") is an African American male over the

age of 40, residing in New York, New York 10150.

10.     Defendant MetLife Group, Inc., ("MetLife") is a domestic business corporation

registered in New York State providing financial and insurance services and employing in excess

of 200 persons with various locations within New York City, and a principal executive office at 200 Park Avenue, New York, NY 10166.

11.      Plaintiff was, at all relevant times hereto, an employee of defendant MetLife, an employer within the meaning of all above named Federal, State and Civil laws.

12.      Plaintiff was employed at MetLife's offices located at 1095 Ave of The Americas, 19th Floor, New York, NY 10036-6796.

13.      Defendant Douglas Rayvid ("Rayvid") is a Caucasian male employee of MetLife, and at all relevant times occupied the position of Executive Vice President, Chief Compliance Officer.

14.      Rayvid was Plaintiff's direct manager.

15.      On information and belief, defendant Rayvid was been primarily responsible for the discriminatory and retaliatory actions against Plaintiff, including the failure to promote, based on Plaintiff's race and age.

16.      Defendant Tom Luckey ("Luckey") is a Caucasian male employee of MetLife, and at all relevant times occupied the position of Senior Vice President in the Corporate Risk Management and Investigations department.

17.      Luckey was Plaintiff's direct manager.

18.      On information and belief defendant Luckey was primarily responsible for the discriminatory and retaliatory actions against Plaintiff, including the failure to promote, based on Plaintiff's race and age.

19.      Defendant Ricardo Anzaldua ("Anzaldua") is a male of Mexican descent, and an employee of MetLife, and at all relevant times occupied the position of Executive Vice President, and General Counsel.

20.      Defendant Rayvid reported to defendant Anzaldua.

3

21.     On information and belief, defendant Anzaldua was primarily responsible for the discriminatory and retaliatory actions against Plaintiff, including the failure to promote, based on Plaintiff's race and age.

22.     All defendants are employers within the meaning of the laws asserted herein.

## STATEMENT OF FACTS

23.     Plaintiff's date of birth is November 1, 1970.

24.     Plaintiff was hired by defendant MetLife on October 6, 2014, as a Director, Lead Data Privacy Consultant, in its Corporate Ethics and Compliance ("CEC") department.

25.     Plaintiff worked in the smaller subdivision of the CEC, the MetLife Corporate Privacy Office (MCPO).

26.     At all relevant times the CEC department consisted of approximately 120 employees.

27.     Plaintiff, at all relevant times, was the <u>only</u> African American male at grade level 31 (Director Level) or above, in the CEC department.

28.     Plaintiff, at all relevant times, was the oldest male staff member in the MCPO

29.     Plaintiff's immediate manager and supervisor was Joseph Trovato ("Trovato"), MetLife's Chief Privacy Officer.

30.     Trovato personally hired Plaintiff.

31.     Trovato told Plaintiff that it was his plan to retire in December 2016.

32.     Upon information and belief, Trovato told the MCPO team, including Luckey and Rayvid, and persons within MetLife's Law Department, that it was his plan to retire in December 2016.

## Trovato Trains Plaintiff For The Position of Chief Privacy Officer

33.     Plaintiff and Trovato had an excellent working relationship.

4

34.     Trovato, in Plaintiff's 2015 Performance Assessment, commented that he considered Plaintiff, "*a pleasure to work with*" and *"a valued partner."*

35.     Plaintiff's work performance was good[1] throughout his tenure with Defendants.

36.     Plaintiff and Trovato lunched twice a week, where they discussed Plaintiff's career path at MetLife.

37.     Plaintiff was being trained by Trovato to take over from him as Chief Privacy Officer after Trovato's retirement.

38.     Plaintiff was effectively the acting Chief Privacy Officer whenever Trovato was not available as evidenced by the following: Plaintiff was the designated contact for the MCPO when Trovato was out of the office, Trovato's "go to" person on Trovato's voicemail and email when Trovato was not available; Plaintiff attended meetings and met with individuals when Trovato was not available, including the Global Architecture Review Board ("GARB"); the Records and Information Management team; American Council of Life Insurers (ACLI); America's Health Insurance Plans (AHIP); McKinsey & Co., Corporate Security auditors; the monthly Business Information Security Officer (BISO) meeting with Zulfi Ahmed, Chief Information Security Officer; Edward Levy, the VP of Global; Audrey Foster, CISOs Chief of Staff;Aaron Ades (IT Risk & Security);Roger Elder (Privacy attorney); David Ross ( IT attorney); Aaron Ades (IT Risk & Security); Ashely Rowe (Privacy attorney); Haroula Ballas (Product attorney); in addition, Plaintiff was the designated point of contact with the Illinois Attorney General's Office, Mario Gutierrez (Government Relations), the Europe Government Relations, and the Wisconsin Office of the Commissioner of Insurance (OCI).

39.     Plaintiff's work experience, credentials and qualifications were extensive in the areas of

---

[1] Defendants' performance rating system was a 1-4 system: 1 = Poor, 2 = Average; 3 = Good; 4 = Excellent.

privacy, information security, compliance and IT risk management.

40.     Plaintiff gained extensive experience to all areas of IT, privacy and security, throughout his tenure at MetLife.

41.     Plaintiff has numerous privacy, security and audit related certifications, including Certified Information Privacy Manager (CIPM), Certified Information Privacy Technologist (CIPT); Certified Information Privacy Professional/United States (CIPP/US); Certified Information Privacy Professional/Europe (CIPP/E); Certified Information Systems Auditor (CISA); Certified Internal Auditor (CIA); Certified in Risk Management Assurance (CRMA); Certified Information Systems Security Professional (CISSP), and Certified Information Security Manager (CISM).

42.     Plaintiff was the logical choice to take over the Chief Privacy Officer role from Trovato.

**Plaintiff Complains of Discrimination**

43.     Plaintiff attended a meeting for CEC's Directors in June 2015.

44.     Defendants Anzaldua and Rayvid hosted the June 2015 meeting.

45.     The purpose of the June 2015 meeting was to explore how MetLife could retain more people of color.

46.     MetLife had a lack of diversity in its upper ranks.

47.     Plaintiff, following the meeting, complained to Defendant Rayvid that there were few growth or leadership opportunities at MetLife for current Associates of color.

48.     Plaintiff also complained to Defendant Rayvid that there were limited efforts to attract people of color to the Compliance Department.

49.     After the meeting, Defendant Rayvid asked to meet with Plaintiff to discuss his complaints.

50.   Defendant Rayvid and Plaintiff met in December 2015.

51.   Plaintiff again complained to Defendant Rayvid, at the December 2015 meeting, that there were few growth or leadership opportunities at MetLife for current Associates of color.

52.   Plaintiff again complained to Defendant Rayvid, at the December 2015 meeting, that there were limited efforts to attract people of color to the Compliance Department.

53.   Plaintiff, following his December 2015 meeting with Defendant Rayvid, sent Rayvid feedback on how MetLife could recruit more people of color, including details of people of color organizations, cost of joining the organizations, cost of sponsorship, etc.

54.   Defendant Rayvid ignored Plaintiff's complaints.

55.   Defendant Rayvid failed to implement any of Plaintiff's suggestions.

56.   Defendant Rayvid failed to take any action to remedy Plaintiff's complaints.

57.   Within two (2) months of complaining to Rayvid at the December 2015 meeting, Plaintiff was passed over for promotion to the position of Chief Privacy Officer.

## Plaintiff Is Passed Over For Promotion

58.   Trovato, on or about Friday, February 12, 2016, informed Plaintiff that he (Trovato) had been forced by MetLife management to retire by the end of February, 2016.

59.   Trovato was retiring earlier than he had originally anticipated.

60.   The position of Chief Privacy Officer was, at some point, open and available.

61.   Plaintiff was qualified for the position of Chief Privacy Officer.

62.   Defendants appointed Jon Corbett ("Corbett") to the position of Chief Privacy Officer.

63.   Corbett is a Caucasian male.

64.   Corbett is substantially younger than Plaintiff.

65.   Corbett is significantly less experienced than Plaintiff.

66.     Corbett is significantly less qualified than Plaintiff.

67.     Corbett was an outside hire.

68.     Corbett was transferred from MetLife's Anti-Money Laundering/Anti-Bribery and Corruption team.

69.     Corbett has less experience than Plaintiff with respect to generally accepted privacy principles (GAPP); management; notice; choice and consent; purpose specification; use limitation and disposal; access; security safeguards; disclosure to third parties; data quality; and management and enforcement.

70.     Max Bolstad, Corbett's former manager, told Plaintiff that Corbett's AML/ABC staff often complained about his (Corbett's) management style, his micromanaging, and his ineffective ability to communicate with his staff.

71.     Plaintiff was denied promotion to the position of Chief Privacy Officer.

72.     Plaintiff was denied the opportunity to apply for the promotion to the position of Chief Privacy Officer.

73.     Trovato, on or about Friday, February 12, 2016, informed Plaintiff that the position of Chief Privacy Officer had already been filled.

74.     Trovato, on or about Friday, February 12, 2016, refused to tell Plaintiff who had been appointed to the position of Chief Privacy Officer.

75.     Upon information and belief, Defendants had already appointed Corbett to the position of Chief Privacy Officer by February 12, 2016.

76.     Defendant Rayvid, on or about February 16, 2016, sent out a notice to the Compliance department, confirming that Corbett had been appointed to the position of Chief Privacy Officer.

77.     Trovato, on or about Wednesday, February 17, 2016, personally informed Plaintiff that Corbett had been appointed to the position of Chief Privacy Officer.

78.     Plaintiff was shocked by the appointment of Corbett to the position of Chief Privacy Officer.

79.     Plaintiff had fully expected to be appointed to the position of Chief Privacy Officer when Trovato retired.

80.     Defendants did not post the vacancy for Chief Privacy Officer.

81.     Defendant MetLife's own policies and procedures dictate that open positions are posted.

82.     Defendant MetLife, in contradiction with its own policies and procedures, did not post the position of Chief Privacy Officer.

83.     Plaintiff was not made aware of that the position of Chief Privacy Officer was open and available.

84.     Plaintiff was not made aware of that the position of Chief Privacy Officer was open and available prior to Corbett's appointment to it.

85.     Plaintiff could not formally apply for the position of Chief Privacy Officer because Plaintiff was not made aware that the position of Chief Privacy Officer was open and available.

86.     Plaintiff had attempted to apply for the position of Chief Privacy Officer through the informal procedures endorsed by MetLife.

87.     The informal procedures consisted of, but were not limited to, Plaintiff ensuring that Trovato, and Defendants Luckey and Rayvid were aware that he (Plaintiff) fully expected to be appointed to the position of Chief Privacy Officer when Trovato retired.

88.     Trovato and Defendants Luckey and Rayvid were in fact aware that Plaintiff fully expected to be appointed to the position of Chief Privacy Officer when Trovato retired.

89.     MetLife discriminated against Plaintiff by failing to promote him to the position of Chief Privacy Officer because of his age, race and color.

90.     MetLife discriminated against Plaintiff by failing to promote him to the position of Chief Privacy Officer in retaliation for his protected activity in December 2015, two (2) months earlier.

91.     MetLife discriminated against Plaintiff by failing to give Plaintiff the opportunity to apply for the open and available position of Chief Privacy Officer, because of Plaintiff's age, race and color.

92.     MetLife discriminated against Plaintiff by failing to give Plaintiff the opportunity to apply for the open and available position of Chief Privacy Officer in retaliation for his protected activity two (2) months earlier, in December 2015.

### Plaintiff is Constructively Discharged

93.     Plaintiff's position at MetLife became increasingly intolerable, difficult and unpleasant.

94.     Plaintiff found it intolerable that he has been passed over for promotion because of his race and color.

95.     Plaintiff found it intolerable that he has been passed over for promotion because of his age.

96.     Plaintiff found it intolerable that he has been passed over for promotion in retaliation for complaining about discrimination in December 2015.

97.     Plaintiff spoke with Defendant Luckey on March 2, 2016.

98.     Plaintiff's asked Luckey why he (Plaintiff) had not been promoted to Chief Privacy Officer.

99.     Luckey told Plaintiff that Corbett had been appointed because MetLife, *"wanted to save money."*

100.    Upon information and belief, MetLife did not save money by appointing Corbett over Plaintiff.

101.    Corbett, on being given the position of Chief Privacy Officer, had been promoted up one level, from Director to Assistant Vice President, and had received a raise and other benefits.

102.    Upon information and belief, Luckey's statement that Corbett had been appointed because MetLife, *"wanted to save money"* was a lie, and was pretext for discrimination.

103.    On March 14, 2016, Plaintiff resigned.

104.    Plaintiff, in his resignation email to Defendant Luckey, dated March 14, 2016, stated, *"I must concede that I walked away from our discussion [on March 2, 2016] with the impression that the SLT [Senior Management Team] doesn't fully understand diversity and what it means to actually provide equal opportunities to MetLife associates. I believe the Chief Privacy Officer role was a clear opportunity where the SLT could have demonstrated a commitment to diversity by promoting either a female or a person of color who have both subject matter expertise in privacy and a strong foundation in risk and control as a former auditor, especially at a time when Privacy and Information Security are so high profiled."*

105.    Plaintiff's last day of work was March 25, 2016.

106.    Plaintiff resigned despite having no other employment to go to.

107.    At all relevant times Defendants Rayvid, Luckey and Anzaldua were the main decision makers who failed to post the position of Chief Privacy Officer vacated by Trovato.

108.     At all relevant times Defendants Rayvid, Luckey and Anzaldua were the main decision makers who failed to promote Plaintiff to the position of Chief Privacy Officer.

109.    At all relevant times Defendants Rayvid, Luckey and Anzaldua were the main decision makers who retaliated against Plaintiff for his protected activity in December 2015.

110.    At all relevant times Defendants Rayvid, Luckey and Anzaldua were the main decision makers who appointed a Caucasian male who was younger, less qualified, and less experienced than Plaintiff, to the position of Chief Privacy Officer.

111.    Plaintiff and other non-Caucasian persons have been denied senior management positions and higher level positions and promotions in favor of Caucasian males who have fewer qualifications and are less experienced.

112.    Plaintiff and other employees over the age of 40 have been denied senior management positions and higher level positions and promotions in favor of persons under the age of 40 who have fewer qualifications and are less experienced.

113.    Upon information and belief, and by way of example, in or about January 2016, Plaintiff's colleague, Evett Murray Mayers, a female African American, filed a complaint against MetLife in the EEOC alleging hostile work environment, age and race discrimination.

114.    Upon information and belief, and by way of example, Plaintiff's colleague, Janice Rehman, a Caucasian female over the age of 40, applied for the position vacated by Plaintiff of Director, Lead Data Privacy Consultant.

115.    Upon information and belief, Ms. Rehman was not selected for the position of Director, Lead Data Privacy Consultant.

116.    Upon information and belief, the position went to a Caucasian male substantially younger and less experienced than Ms. Rehman.

117.    Upon information and belief, Ms. Rehman made an internal complaint to MetLife of age discrimination.

**Liability**

118.    Defendants Rayvid, Luckey and Anzaldua were and are employees, agents and servants of the Defendant MetLife.

119.    Defendants Rayvid, Luckey and Anzaldua acted within the scope of their employment, in furthering the business interests of MetLife, and MetLife instigated, controlled, directed or ratified Defendants Rayvid, Luckey and Anzaldua's acts as alleged here.

120.    Defendants Rayvid, Luckey and Anzaldua committed, were aware of, authorized and/or condoned the discriminatory and unlawful behavior against Plaintiff.

121.    The actions complained of here were committed intentionally by Defendants and constitute a continuing policy and practice of discrimination.

122.    Defendant Rayvid controlled the terms of Plaintiff's work, and he took the decision not to promote Plaintiff to the position of Chief Finance Officer, and he is therefore individually liable.

123.    Defendant Luckey controlled the terms of Plaintiff's work, and he took the decision not to promote Plaintiff to the position of Chief Finance Officer, and he is therefore individually liable.

124.    Defendant Anzaldua controlled the terms of Plaintiff's work, and he took the decision not to promote Plaintiff to the position of Chief Finance Officer, and he is therefore individually liable.

**Damages**

125.     Plaintiff was shocked and extremely upset to be passed over for promotion after two years of outstanding job performance.

126.    Because Defendants' discrimination of Plaintiff as described here was done with oppression, malice, and/or a reckless or conscious indifference to Plaintiff's protected rights,

Plaintiff seeks punitive damages.

127.    Defendants' unlawful action have caused Plaintiff enormous financial hardship and emotional distress, including but not limited to humiliation, depression, stress, anxiety, sleeping problems, and other related forms of emotional distress.

## COUNT ONE: RACE DISCRIMINATION and RETALIATION

## (SECTION 1981)

128.    The allegations in the preceding paragraphs are repeated here as if fully stated.

129.    Defendants intentionally discriminated and retaliated against Plaintiff on the basis  of his race and color in violation of Section 1981.

130.    Defendants Luckey, Rayvid and Anzaldua, were personally  involved in the discrimination and retaliation with their direct participation.

131.    Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT TWO: RACE DISCRIMINATION and RETALIATION

## (TITLE VII)

132.    The allegations in the preceding paragraphs are repeated here as if fully stated.

133.    Defendants intentionally racially discriminated and retaliated against Plaintiff in violation of Title VII.

134.    Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

135.    Defendants Luckey, Rayvid and Anzaldua, were personally  involved in the discrimination and retaliation with their direct participation.

136.    Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT THREE: AGE DISCRIMINATION and RETALIATION

## (ADEA)

137.   The allegations of the preceding paragraphs are repeated here as if fully stated.

138.   In violation of section the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§. 621 et seq., Defendants did intentionally discriminate and retaliate against Plaintiff on the basis of his age in violation of the ADEA.

139.   Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT FOUR: DISCRIMINATORY FAILURE TO PROMOTE based on RACE, COLOR and AGE

## (Title VII)

140.   The allegations of the preceding paragraphs are repeated here as if fully stated.

141.   The position of Chief Privacy Officer was open and available.

142.   Plaintiff was qualified for the position of Chief Privacy Officer.

143.   Defendants did not post the open and available position of Chief Privacy Officer.

144.   Plaintiff informally applied for the position of Chief Privacy Officer.

145.   Plaintiff was not appointed to the position under circumstances giving rise to an inference of discrimination.

146.   Defendants appointed Corbett to the position of Chief Privacy Officer, a younger, Caucasian male, who was outside Plaintiff's protected class.

147.   Corbett was less qualified than Plaintiff for the position of Chief Privacy Officer.

148.   Defendants' ongoing discriminatory and retaliatory actions rendered Plaintiff's work environment objectively intolerable that forced Plaintiff to resign.

15

149.     Plaintiff suffered damages as a result of defendant's discriminatory conduct.

150.     Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT FIVE: UNEQUAL PAY

### (Title VII and Lilly Ledbetter Fair Pay Act of 2009 (Fair Pay Act))

151.     The allegations of the preceding paragraphs are repeated here as if fully stated.

152.     In violation of Title VII and Lilly Ledbetter Fair Pay Act of 2009 (Fair Pay Act), defendants did not provide equal pay for equal work and/or reward excellent performance.

153.     Upon information and belief, Plaintiff's co-worker was Christin Williams, a Caucasian female.

154.     Upon information and belief, Christin Williams was at the same grade level as Plaintiff but had significantly less experience than Plaintiff.

155.     Upon information and belief, Plaintiff was paid $5000 less per year than Christin Williams.

156.     Plaintiff suffered damages as a result of defendant's discriminatory conduct.

157.     Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $100,000.

## COUNT SIX: RACE DISCRIMINATION and RETALIATION

### (SHRL)

158.     The allegations in the preceding paragraphs are repeated here as if fully stated.

159.     Defendants intentionally racially discriminated and retaliated against Plaintiff in violation of the SHRL.

160.     Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

161.     Plaintiff has thereby been damaged in an amount as yet undetermined, but

16

exceeding $100,000.00.

## COUNT SEVEN: AGE DISCRIMINATION and RETALIATION

## (SHRL)

162.    The allegations in the preceding paragraphs are repeated here as if fully stated.

163.    Defendants  intentionally  discriminated and retaliated against Plaintiff because of his

age i n  violation of the SHRL.

164.    Defendants' actions were malicious, willful and reckless violation of Plaintiff's rights.

165.    Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding
$1,000,000.

## COUNT EIGHT: RACE DISCRIMINATION and RETALIATION

## (CHRL)

166.    The allegations in the preceding paragraphs are repeated here as if fully stated.

167.    Defendants intentionally racially discriminated and retaliated against Plaintiff in

violation of the CHRL.

168.    Defendants Luckey, Rayvid and Anzaldua, personally aided and abetted in the

discrimination.

169.    Defendants' actions were malicious, willful and reckless violation of Plaintiff's rights.

170.    Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding
$1,000,000.

## COUNT NINE: AGE DISCRIMINATION and RETALIATION

## (CHRL)

171.    The allegations in the preceding paragraphs are repeated here as if fully stated.

172.    Defendants  intentionally  discriminated and retaliated against Plaintiff because of his

age i n   violation of the CHRL.

173.    Defendants Luckey, Rayvid and Anzaldua, personally aided and abetted in the discrimination.

174.    Defendants' actions were malicious, willful and reckless violation of Plaintiff's rights.

175.    Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT TEN: CONSTRUCTIVE DISCHARGE

176.    The allegations in the preceding paragraphs are repeated here as if fully stated.

177.    Defendants' ongoing intentional age discrimination, racial discrimination, and retaliation against Plaintiff – and their refusal to remedy and prevent the same - rendered Plaintiff's work environment so objectively intolerable that Plaintiff was forced to resign on March 14, 2016.

178.    Defendants rendered Plaintiff's work environment objectively intolerable in violation of all Federal, State and City statutes, including Section 1981, the ADEA, Title VII, the SHRL, and the CHRL.

179.    Defendants' actions were malicious, willful and reckless violation of Plaintiff's rights.

180.    Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $100,000.00.

## COUNT ELEVEN: Intentional Infliction of Emotional Distress

## (Against ALL DEFENDANTS)

## (TORT LAW)

181.    The allegations of the preceding paragraphs are repeated here as if fully stated.

182.    By the conduct alleged above, Defendants, and each of them, acted outrageously, with the intention to cause, or with reckless disregard of the probability of causing Plaintiff severe emotional distress.

183.    This conduct, which was unprivileged and unwanted by Plaintiff, actually and proximately caused Plaintiff severe emotional distress.

184.    Defendants, and each of them, harmed Plaintiff because those actions caused her to suffer humiliation, embarrassment, mental anguish, and emotional distress. The actions of Defendants, and each of them, injured Plaintiff's mind and body. As a result of such unlawful conduct and consequent harm, Plaintiff suffered damages that will be proven at trial.

185.    The conduct of Defendants proximately caused Plaintiff to suffer, and to continue to suffer, damages, including injuries to her person in an amount which will be proven at trial.

186.    The malicious and/or oppressive conduct of all Defendants was in reckless disregard of Plaintiff's rights and therefore warrants the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be granted as follows:

a.      The amount sought for each cause of action;

b.      Liquidated damages;

c.      Punitive damages exceeding $1,000,000;

d.      An order enjoining Defendants from engaging in the wrongful practices alleged herein;

e.      Attorney's fees and costs; and

f.      Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.


Dated: New York, New York
May 20, 2018

                                       Respectfully submitted,

                                             /ss

                                  _____
                                    Anne Donnelly Bush, Esq. (AD5486)
                                    ***Attorney for the Plaintiff***
                                    43 West 43rd Street, Ste. 117
                                    New York, New York 10036-7424
                                    Tel.: (914) 239-3601
                                    Fax: (914) 219-3145