UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/18/2019

TONY SPIRES,

                 Plaintiff,

        v.

METLIFE GROUP, INC., *et al.*,

                 Defendants.

No. 18-CV-4464 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

       Plaintiff Tony Spires brings this action against Defendant MetLife Group, Inc. ("MetLife"), and Defendants Tom Luckey, Douglas Rayvid, and Ricardo Anzaldua (collectively, the "Individual Defendants"), asserting claims for race discrimination, age discrimination, retaliation, constructive discharge, and pay discrimination. Defendant MetLife and the Individual Defendants now move to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is denied with respect to: (1) Plaintiff's race discrimination claim against Defendant MetLife for failure to promote under Title VII, § 1981, the NYSHRL, and the NYCHRL; (2) Plaintiff's race discrimination claim against the Individual Defendants for failure to promote under § 1981, the NYSHRL, and the NYCHRL; and (3) Plaintiff's pay discrimination claim against Defendant MetLife under Title VII. All of Plaintiff's remaining claims are dismissed.

## FACTUAL BACKGROUND

       The following facts are adopted from Plaintiff's first amended complaint (the "amended complaint"), and are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint*

*Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Plaintiff Tony Spires is an African-American male who was forty-five years old at the time of the discriminatory events alleged in his amended complaint. *See* Am. Compl. ¶¶ 1, 23. On October 6, 2014, Plaintiff was hired by Defendant MetLife, a financial and insurance services firm, as a director in its Corporate Ethics and Compliance ("CEC") department. *See id.* ¶ 24. According to Plaintiff, he was the only African-American male at the director level or above in the CEC, which consisted of approximately 120 employees, *see id.* ¶¶ 29-30, and the oldest male staff member in the MetLife Corporate Privacy Office (the "MCPO"), the subdivision of the CEC in which he worked, *see id.* ¶ 31.

Spires directly reported to Defendant Luckey, the Senior Vice President in the Corporate Risk Management and Investigations department, *see id.* ¶¶ 16-17, and Defendant Rayvid, an Executive Vice President and the Chief Compliance Officer at MetLife, *see id.* ¶¶ 13-14.  In turn, Rayvid reported to Defendant Anzaldua, an Executive Vice President and the General Counsel of MetLife.  *See id.* ¶¶ 19-20.  Luckey and Rayvid are white males, *see id.* ¶¶ 13, 16, and Anzaldua is a male of Mexican descent, *see id.* ¶ 19.

According to Plaintiff, he was initially hired by Joseph Trovato, then the Chief Privacy Officer ("CPO"), with whom he "had an excellent working relationship." *Id.* ¶¶ 32-33, 36. Spires contends that, from the beginning of his tenure, he believed that he was being trained to take over as CPO when Trovato retired. *See id.* ¶ 40.  Plaintiff based this understanding on four grounds.  First, Plaintiff states that he and Trovato had lunch twice a week, "where they discussed Plaintiff's career path at MetLife." *Id.* ¶ 39.  Second, Plaintiff asserts that Trovato told his secretary, Linda Hain, that Trovato "intended for [Spires] to take over his duties as Chief Privacy Officer when [Trovato] retired." *Id.* ¶ 41.  Third, Plaintiff maintains that when Trovato

was unavailable, Spires "effectively" acted as CPO, which included, among other things, attending meetings and talking to individuals in Trovato's stead. *Id.* ¶ 42. Finally, Plaintiff alleges that he has "extensive experience [in] all areas of IT, privacy and security," which made him "the logical choice" for "the Chief Privacy Officer role." *Id.* ¶¶ 43-46.

In June 2015, Plaintiff attended a CEC meeting for the department's directors hosted by Anzaldua and Rayvid. *See Id.* ¶¶ 47-48. According to Spires, the purpose of this meeting was to discuss how MetLife could retain more people of color, especially in its "upper ranks." *Id.* ¶¶ 49-50. Following the meeting, Plaintiff apparently complained to Rayvid that "there were few growth or leadership opportunities at MetLife for current Associates of color," and that he felt that the company made only "limited efforts to attract people of color to the Compliance Department." *Id.* ¶¶ 51-53.

Plaintiff further met with Rayvid in December 2015 to discuss the concerns that he had raised after the June 2015 meeting. *See id.* ¶¶ 54-55. Spires also sent Rayvid feedback on how MetLife could attract more people of color. *See id.* ¶ 57. According to Plaintiff, Rayvid ignored his complaints, and failed to implement any of Spires' suggestions. *See id.* ¶¶ 58-60.

In early 2016, Trovato was apparently "forced by MetLife management to retire." *Id.* ¶ 62. According to Spires, contrary to MetLife's own policies and procedures, the company did not post the newly-available position of CPO, *see id.* ¶ 86, nor did anyone make him "aware that the position of Chief Privacy Officer was open and available," *id.* ¶ 87. Rather, on February 12, 2016, Trovato informed Spires that he was retiring from MetLife. *See id.* ¶ 62. Four days later, Rayvid sent out a notice to the Compliance department that Jon Corbett, a white male "substantially younger" than Plaintiff, had been appointed the new CPO. *Id.* ¶¶ 80, 67-68. Spires asserts that Luckey and Rayvid were aware that he "fully expected to be appointed to the

position of Chief Privacy Officer when Trovato retired," *id.* ¶¶ 91-92, and "[a]t all relevant times Defendants Rayvid, Luckey and Anzaldua were the main decision makers who failed to promote Plaintiff to the position of Chief Privacy Officer," *id.* ¶ 118.

Plaintiff alleges that he was "shocked" by Corbett's appointment as CPO. *Id.* ¶¶ 82-83. According to Spires, Corbett was an outside hire from MetLife's Anti-Money Laundering/Anti-Bribery and Corruption team, and was not nearly as experienced and qualified as himself. *See id.* ¶¶ 69-73. In particular, Plaintiff alleges that Corbett was less experienced "with respect to generally accepted privacy principles (GAPP); management; notice; choice and consent; purpose specification; use limitation and disposal; access; security safeguards; disclosure to third parties; data qualify; and management and enforcement." *Id.* ¶ 73. Spires also claims that Corbett's former supervisor told him that Corbett had poor management skills. *See id.* ¶ 74.

On March 2, 2016, Plaintiff apparently asked Luckey why Corbett, and not himself, had been promoted to CPO. *See id.* ¶¶ 102-03. Luckey supposedly responded that this was because MetLife "wanted to save money." *Id.* ¶ 104 (italics omitted). According to Spires, this explanation made no sense, as Corbett had received a raise and other benefits in taking the CPO position, and the company then could not have saved money by appointing him. *See id.* ¶¶ 105-06.

Based on this information, Plaintiff asserts that the only explanation for him not receiving the CPO position was because of his race and age, and as retaliation for his complaints to Anzaldua and Rayvid about MetLife's inability to recruit more persons of color. *See id.* ¶¶ 98-99, 109. According to Spires, this knowledge made working at the company "increasingly intolerable, difficult and unpleasant." *Id.* ¶ 97.

On March 14, 2016, Plaintiff tendered his resignation. *See id.* ¶ 113. That same day,

Spires emailed Luckey that "the SLT [Senior Management Team] doesn't fully understand diversity and what it means to actually provide equal opportunities to MetLife associates," as evidenced by the company's failure to promote him to CPO and its recurring failure to place more people of color in management positions. *Id.* ¶ 114 (italics omitted) (brackets in original). Plaintiff left MetLife on March 25, 2016, "despite having no other employment to go to." *Id.* ¶¶ 115-16.

## PROCEDURAL HISTORY

On May 20, 2018, Plaintiff filed this action against Defendants, alleging race discrimination and retaliation pursuant to 42 U.S.C. § 1981; race, color, and age discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); age discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § § 621 *et seq.* (the "ADEA"); unequal pay in violation of the Lilly Ledbetter Fair Pay Act of 2009 ("the Fair Pay Act") and Title VII; constructive discharge; intentional infliction of emotional distress ("IIED"); and race and age discrimination and retaliation pursuant to New York State Human Rights Law, Executive Law § 290, *et seq.* (the "NYSHRL") and the New York City Human Rights Law, § 8-107 (the "NYCHRL"). *See* Dkt. 1.

On September 6, 2018, Defendants moved to dismiss Plaintiff's initial complaint for failure to state a claim. *See* Dkt. 25. In response to Defendants' motion, on September 24, 2019, Spires filed an amended complaint containing greater factual detail, but maintaining the same causes of action in his initial pleading except for his IIED claim. *See* Dkt. 33.

In Spires' amended complaint, as in his original complaint, he makes four substantive allegations. First, Plaintiff asserts that Defendants discriminated against him by refusing to

promote him to Chief Privacy Officer because of his age and race. *See* Am. Compl. at 17-19, 20-21. Second, Plaintiff alleges that Defendants illegally retaliated against him for his complaints about MetLife's failure to attract more employees of color. *See id.* at 17-18, 20-22. Third, Plaintiff claims that he was constructively discharged by the company because he found it intolerable to work there knowing that he had been passed over for promotion for discriminatory reasons. *See id.* at 22. Finally, Plaintiff alleges that MetLife denied him equal pay based on his race and sex, as evidenced by the fact that a white female employee in a similar position to himself received $5,000 more a year than him, even though this individual was purportedly less experienced and qualified than Spires. *See id.* at 19-20.

On October 9, 2018, Defendants informed the Court that they would "rely on their previously filed Motion to Dismiss Plaintiff's Complaint." Dkt. 37 at 1. Defendants subsequently filed their reply brief in further support of their motion to dismiss Plaintiff's amended complaint. *See* Dkt. 41. With the Court's permission, *see* Dkt. 43, Plaintiff then filed a short sur-reply, *see* Dkt. 44.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

enhancement.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

## ANALYSIS

### I.      Plaintiff's Failure to Promote Claim Based on his Race[1]

Plaintiff first alleges that Defendants declined to promote him to Chief Privacy Officer based on his race in violation of Title VII, § 1981, the NYSHRL, and the NYCHRL.

Employment discrimination claims brought under Title VII, § 1981, and the NYSHRL are analyzed pursuant to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *see also Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (applying this framework with respect to Title VII and § 1981); *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) (applying this framework with respect to Title VII, § 1981, and the NYSHRL).   Under the *McDonnell Douglas* framework, to make a prima facie showing of failure to promote or hire under Title VII, § 1981, and the NYSHRL, a plaintiff must establish that: "(1) []he is a member of a protected class; (2) []he applied and was qualified for a job for which the employer was seeking applicants; (3) []he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."[2]  *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)).

The Second Circuit has held that "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss,

---

[1] Although Spires separately asserts causes of action for (1) race discrimination under Title VII, § 1981, the NYSHRL, and the NYCHRL, *see* Am. Compl. at 17-19, 20-22, and (2) discriminatory failure to promote based on race, *see* Am. Compl. at 18-19, because his race discrimination claim is based entirely on his discriminatory failure to promote claim, *see* Am. Compl. at 8-11, the Court treats these as a single claim.

[2] The fourth prong may also be satisfied where, as here, *see* Am. Compl. ¶¶ 86-89, Plaintiff alleges that the job position at issue was not posted and the plaintiff-employee had no knowledge of its availability.  *See, e.g.*, *Petrosino v. Bell Atlantic.*, 385 F.3d 210, 227 (2d Cir. 2004).

it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2013) (internal citations, alterations, and quotations omitted). Specifically, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

In this case, it is undisputed that Plaintiff is a member of a protected class and suffered an adverse employment action. *See Treglia v. Town of Manilus*, 313 F.3d 713, 720 (2d Cir. 2002) (recognizing the discriminatory failure to promote as "within the core activities encompassed by the term adverse actions") (internal quotation marks omitted). At this stage of the proceedings, Defendants also do not dispute that Spires was qualified for the position of CPO. Rather, Defendants argue that "Plaintiff's bare-bones allegations are insufficient" to show that Defendants' decision not to promote him was motivated by discriminatory intent. Defs.' Br. at 22.

The Court agrees that Plaintiff has failed to sufficiently allege that Defendants' discriminatory intent was evidenced, as Spires alleges, by a larger "pattern and practice of failing to promote people of color within MetLife." *See* Am. Compl. at 12, 1, 16. "[A] pattern-or-practice claim requires plaintiffs to show that 'discrimination was [Defendants'] standard operating procedure'—the 'regular rather than the unusual practice.'" *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 426 (S.D.N.Y. 2014) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). In his amended complaint, Plaintiff does not point to *any* other individual who was allegedly not promoted by Defendants on account of his or her race.

And while Plaintiff states that a female African-American colleague "filed a complaint against MetLife [to] the EEOC alleging hostile work environment, age and race discrimination," Am. Compl. ¶ 123, he provides no further details on this matter or about this individual. *See Barrett*, 39 F. Supp. 3d at 430 ("'While the definition of a pattern or practice is not capable of a precise mathematical formulation, more than two acts will ordinarily be required.'") (quoting *Ste. Marie v. E.R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981)).

Nevertheless, at the motion to dismiss stage, a plaintiff may also raise an inference of discriminatory intent by showing that the defendants subjected him to disparate treatment, namely, that they "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R. R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Barrett*, 39 F. Supp. 3d at 426 (Whereas a "pattern-or-practice claim requires plaintiffs to show discrimination was the company's standard operating procedure," "an individual disparate impact claim requires an intent to discriminate against one person.") (internal quotation marks omitted). The Second Circuit has made clear that a plaintiff will ordinarily meet this standard by pleading that he "was replaced by someone outside [that individual's] protected class." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 313 (2d Cir. 2015); *Zimmerman v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis.").

Although a close question, particularly given that there is no direct evidence of discrimination, the Court finds that Defendant has satisfied this "minimal" standard. In his amended complaint, Spires alleges that Defendants declined to promote him in favor of Jon Corbett, who he asserts was a similarly situated individual outside of his protected class. *See*

Am. Compl. at 8 (describing that he and Corbett occupied comprable positions at MetLife and sought the same job at the company); *supra.* at 3; *see Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) ("In order for employees to be similarly situated for purposes of establishing a plaintiff's prima facie case," they must have had the same performance standards and engaged in similar conduct.) (internal quotation marks omitted). Plaintiff further provides specific reasons why Corbett was both less experienced and less qualified than himself. *See id.* at 8-10 (listing various duties with respect to the CPO position in which Corbett supposedly had less experience); *supra.* at 4. To make a sufficient showing of discriminatory intent to survive a motion to dismiss, this is all that a plaintiff is required to plead at this stage. *See Littlejohn*, 795 F.3d at 313; *Williams v. Alliance Nat. Inc.*, 24 F. App'x 50, 53 (2d Cir. 2001) ("That Williams's sales duties were then assumed by a newly hired white woman … could give rise to the inference of discrimination."); *Kent-Friedman v. N.Y. State Ins. Fund*, 18 Civ. 4422 (VM), 2018 WL 6547053, at *2 (S.D.N.Y. Nov. 16, 2018) (finding that the plaintiff had satisfied her discrimination claim under Title VII, the NYSHRL, and the NYCHRL where she alleged "that males were promoted or hired for positions for which she applied and was qualified to fill"); *Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 337 (S.D.N.Y. 2017) (finding that the plaintiff had satisfied his discrimination claim under Title VII and the NYSHRL by showing "that he was replaced by two individuals outside his protected class"); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 453 (S.D.N.Y. 2013) (stating that the plaintiff's "replacement by a white employee [would be] enough to get her past the *prima facie* stage").

In response, Plaintiff cites to the case of *Wang v. Gov't Emps. Ins. Co.*, 15-CV-1773 (JS)(ARL), 2016 WL 11469653 (E.D.N.Y. March 31, 2016). In *Wang*, which Defendants characterize as a "close parallel" to the instant action, Defs.' Br. at 21, the court rejected an

Asian-American employee's purported showing of discriminatory intent based on her allegation that her employer had promoted various white men instead of herself. *See Wang,* at *3-4. Specifically, the district court dismissed Wang's complaint because she had failed to: (1) elaborate on her "superior qualifications" as compared to those individuals who had been promoted; (2) discuss her record with her employer in any detail, or (3) provide any information about the individuals promoted demonstrating that they had "equal or less experience to herself." *Id.* at *4. Spires' amended complaint, by contrast, has none of these deficiencies. Rather, as outlined above, *supra.* at 4, 9, Plaintiff details in his pleadings why he was qualified for the CPO position and why these qualifications were purportedly superior to those of Corbett's so as to "nudge [his] claim[] across the line from conceivable to plausible." *EEOC*, 768 F.3d at 254 (internal citations, alterations, and quotations omitted) .[3]

As for the Individual Defendants, Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014). An individual may be held liable under § 1981, however, if that defendant was "personally involved in the alleged deprivation." *Littlejohn*, 795 F.3d at 314. In his amended complaint, Plaintiff explicitly alleges that Defendants Luckey, Rayvid, and Anzaldua, all of whom were Spires' superiors and had jurisdiction over his department, were involved in the decision-making process of discriminatorily promoting Corbett instead of

---

[3] Other cases cited by Defendants, *see* Defs.' Br. at 22, are equally unavailing. *See Barbosa v. Continuum Partners*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010) (dismissing the plaintiff's employment discrimination claim because she failed, unlike in the instant case, to identify "any similarly situated individual, outside of her protected race and age classes, who was treated any differently under similar circumstances"); *Batiste v. City Univ. of N.Y.*, 16-CV-33 (VEC), 2017 WL 2912525, at *9 (S.D.N.Y. July 7, 2017) (dismissing the plaintiff's employment discrimination claim because the plaintiff made no allegation, unlike in the instant case, that she and her replacement "had similar job descriptions or responsibilities"); *De La Pena v. Metro Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) (dismissing the plaintiff's employment discrimination claim because she had failed to contend, unlike in the instant case, that her comparator(s) were similarly situated to herself).

himself.  *See* Am. Compl. at ¶¶ 13-20, 118; *supra.* at 2-3.  Thus, Plaintiff's § 1981 claim for

disparate treatment also survives against the Individual Defendants.  *See Amaya v. Ballyshear*

*LLC*, 295 F. Supp. 3d 204, 225 (E.D.N.Y. 2018) (finding that plaintiff had stated a claim for

personal liability against defendants under § 1981 where he alleged that they were personally

involved in the decision to terminate him); *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403,

422 (N.D.N.Y. 2005) (finding the plaintiff had stated a claim for personal liability against the

defendant under § 1981 where he alleged that the defendant had played a role "in the decision

making process leading up to [his] termination").

  Finally, with respect to Plaintiff's NYSHRL claim against the Individual Defendants,

under this statute, "an individual may be held liable as an employer, but that is limited to

individuals with ownership interest or supervisors, who themselves, have the authority to hire

and fire employees."  *Villar v. City of N.Y.*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015) (internal

quotation marks omitted).  In his amended complaint, Plaintiff alleges that all three of the

Individual Defendants "controlled the terms of Plaintiff's work."  Am. Compl. ¶¶ 150-52.  He

does not allege, however, and it is unclear from Spires' pleadings, whether these individuals had

the "authority to hire and fire" him.  *Villar*, 135 F. Supp. 3d at 143.  Nonetheless, employees may

also be held individually liable under the NYSHRL for "aiding and abetting" discriminatory

practices.  *See Feingold v. New York*, 366 F.3d 138, 157-78 (2d Cir. 2004).  An aider and abettor

is one "who actually participates in the conduct giving rise to a discrimination claim."  *Tomka v.*

*Seiler Corp.*, 66 F. 3d 1295, 1317 (2d Cir. 1995) (*abrogated on other grounds by Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).  Because, as described above, Plaintiff specifically

alleges that all three of the Individual Defendants were personally involved in the discriminatory

conduct at issue, his claim for failure to promote based on race under the NYSHRL also survives

against these individuals based on the alleged "aiding and abetting" of the discriminatory conduct at issue here.

Accordingly, Defendants' motion to dismiss Spires' employment discrimination claim brought pursuant to Title VII, § 1981, the NYSHRL, and the NYCHRL is denied against Defendant MetLife, and denied against the Individual Defendants pursuant to § 1981, the NYSHRL, and the NYCHRL.[4]

## II.      Plaintiff's Failure to Promote Claim Based on his Age[5]

Plaintiff also alleges that MetLife did not promote him to the CPO position because of his age, thereby violating Title VII, the ADEA, the NYSHRL, and the NYCHRL.

As an initial matter, Title VII does not cover discrimination based on an individual's age, *see* 42 U.S.C. § 2000e (a)(1), and the Court thus dismisses this claim.

Under the ADEA and the NYSHRL, to establish a prima facie case of age discrimination, a plaintiff "must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzysnki v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *Abu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (applying these requirements to a NYSHRL claim). Akin to a

---

[4] Because the NYCHRL has a lower standard of liability with respect to both employers and individual defendants than Title VII and the NYSHRL, Plaintiff "necessarily states a claim under the NYCHRL" if he states a claim pursuant to the foregoing statutes. *Taylor v. City of N.Y.*, 207 F. Supp. 3d 293, 304 (S.D.N.Y. 2016); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (stating that parallel federal claims provide "a *floor* below which the City's Human Rights law cannot fall") (internal quotation marks omitted) (emphasis in original); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012) (stating that the NYCHRL applies to individual employees "regardless of ownership or decisionmaking power") (internal quotation marks omitted).

[5] Although Spires pleads separate causes of action for (1) age discrimination under the ADEA, the NYSHRL, and the NYCHRL, *see* Am. Compl. at 18, 20-21, and (2) failure to promote based on his age, *see* Am. Compl. at 18-19, because (as with his race discrimination claim) his age-discrimination claim is based on his failure to promote claim, see Am. Compl. at 8-11, the Court treats these as a single claim.

claim for race-based employment discrimination, "[a] plaintiff need only meet a minimal pleading standard for an age discrimination claim." *Franchino v. Roman Catholic Archdiocese of N.Y.*, 15 CV 6299 (VB), 2016 WL 3360525, at *5 (S.D.N.Y. June 15, 2016) (internal quotation marks omitted). To state a claim pursuant to the ADEA and the NYSHRL, however, a plaintiff must additionally allege "that age was the 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)); *see also Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32-33 (2d Cir. 2016) (A plaintiff must "plead sufficient facts" under the ADEA and the NYSHRL "to plausibly support a minimal inference of 'but-for' causality between his age" and the adverse employment action.).

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination [to] plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "[T]o state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015) (quoting *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014)).

In support of his age-discrimination claims, Plaintiff contends that (1) he was the oldest staff member in his department and (2) Corbett, who was "substantially younger" than Spires, was given the CPO position even though he was less experienced and qualified than Plaintiff. Am. Compl. at ¶¶ 31, 68, 126.

These allegations, standing alone, are insufficient to satisfy an age-discrimination claim.

First, Plaintiff does not allege any facts to support his assertion that the failure to promote him

was predicated on his age. *See Marcus*, 661 F. App'x at 32-33 (making clear that Plaintiff's

claim that he had had been replaced by a less experienced, younger employee was alone

inadequate under the ADEA or the NYSHRL to show that plaintiff would not have been replaced

"but for" his age); *see also Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07- Civ. 11316 (HB), 2008

WL 3861352, at *2, 6 (S.D.N.Y. Aug. 19, 2008) (Plaintiff's claims that she was replaced by a

"younger, less experienced" employee, "without more, is not enough to survive a motion to

dismiss" under the ADEA). Indeed, even under the NYCHRL's more liberal standard, Spires

has not pleaded any facts giving rise to an inference that this adverse employment action was

"motivated by age discrimination." *Williams v. Victoria's Secret*, 15 Civ. 4715 (PGG), 2017 WL

1162908, at *9 (S.D.N.Y. March 28, 2017) (internal quotation marks and brackets omitted); *see*

*Mihalik*, 715 F.3d at 110 (Under the NYCHRL, a plaintiff "must show that []he has been treated

less well at least in part *because of* h[is] age.") (internal quotation marks omitted) (emphasis in

original).

Moreover, Plaintiff was hired in his mid-forties and denied his promotion only two years

later. Although the ADEA does not necessarily foreclose an age-discrimination claim when a

plaintiff was over forty years old when first hired, this substantially weakens any inference of

discrimination on Defendants' part.[6] *See Liburd*, 2008 WL 3861352, at *6 ("Liburd's

conclusory allegation that the Hospital discriminated against her on account of her age is belied

_____

[6] This is not necessarily the case with respect to the NYSHRL or the NYCHRL, which provide protections
to employees over the age of eighteen as opposed to forty. *See* NYSHRL § 296 3-a, NYCHRL §§ 8-101, 102, 107.
Nevertheless, because, as described above, these statutes also require a plaintiff to plead that the defendants
discriminated against him based on his age, and Spires has not done so, Plaintiff has not stated a sufficient claim for
age discrimination under them.

by her having been hired when she was forty-seven years old, and thus already a member of the protected class."); *Whyte v. Contemporary Guidance Servs., Inc.,* No. 03 CV5544 (GBD), 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004) ("[P]laintiff['']s conclusory allegation that CGS discriminates against older employees in an effort to force them to resign is belied by plaintiff's allegation that he was hired when he was forty-three years old, and thus already a member of the protected class."); *O'Connor v. Viacom Inc./Viacom Intern. Inc.*, No. 93 CIV. 2399 (LMM), 1996 WL 194299, at *7 (S.D.N.Y. Apr. 23, 1996) ("[T]he inference of discrimination is much weaker where the plaintiff employee is well within the protected class when first hired.").

The Court therefore grants Defendants' motion to dismiss Plaintiff's age-discrimination claims pursuant to the ADEA the NYSHRL, and the NYCHRL.

## III.    Plaintiff's Retaliation Claims

Plaintiff next contends that Defendants impermissibly retaliated against him in violation of Title VII, § 1981, the NYSHRL, and the NYCHRL by choosing not to promote him to CPO because of his comments to Rayvid that MetLife had failed to recruit enough persons of color. Plaintiff also alleges that Defendants retaliated against him based on his age in violation of the ADEA, the NYSHRL, and the NYCHRL.

To begin with, because Plaintiff provides no facts in support of his age-based retaliation claim, the Court dismisses this claim.  *See Iqbal*, 556 U.S. at 687 (A complaint must "plead sufficient facts to state a claim for purposeful and unlawful discrimination against [Defendants].").

To make a case for race-based retaliation under Title VII, § 1981, or the NYSHRL, a plaintiff must show evidence that "[1] []he engaged in protected [activity] under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the

plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (brackets in original); *see also Ludwig v. Rochester Psych. Ctr.*, 347 F. App'x 685, 686 n.1 (2d Cir. 2009) (Title VII and NYHRL retaliation claims are "subject to the same analysis."). Consequently, for a retaliation claim to survive a motion to dismiss under these statutes, a "plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he ha[d] opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3).

As with claims for race-based discrimination, the NYCHRL states a more liberal standard for retaliation claims than its federal counterparts or the NYSHRL. "[T]o prevail on a retaliation claim under the NYCHRL, plaintiffs must show they took an action opposing the employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 113 (citation omitted).

Plaintiff has not sufficiently pleaded a claim of race-based retaliation under Title VII, § 1981, the NYSHRL, or the NYCHRL. First, Spires does not allege that he either explicitly or implicitly suggested to Anzaldua, Rayvid, or any other employee that the company's failure to recruit more diverse employees was unlawful. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.") (internal quotation marks omitted); *Brantman v. Fortistar Cap., Inc.*, No. 15-CV-4774 (NSR), 2017 WL 3172864, at *7 (S.D.N.Y. July 22, 2017) ("Mere complaints of unfair treatment ... are not protected speech under Title VII.") (internal quotation marks omitted).

Indeed, the fact that Spires made his comments in the context of, and following, a meeting organized by Defendants Anzaldua and Rayvid to discuss how MetLife could retain more people of color further undermines Plaintiff's position that he was retaliated against for complaining to Rayvid about MetLife's failure to attract such individuals.

Moreover, Plaintiff simply asserts, without any factual support, that because he told Rayvid that he was concerned that MetLife did not attract more people of color and promote them to its "upper ranks," and Defendants denied him a promotion two months thereafter, the company's decision not to appoint him CPO constituted retaliation for his earlier comments. But "[s]imply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss." *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d, 131, 154 (E.D.N.Y. 2015); *see also Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 133 (S.D.N.Y. 2002) ("Plaintiff appears to offer little more than a highly speculative argument that because Columbia's immigration-related action occurred later in time than his first EEOC Complaint, the Court should infer retaliatory motive. This argument does not suffice."). For this same reason, Plaintiff also fails to a bring a plausible claim for race-based retaliation under the NYCHRL. *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2015) (As with Title VII, a plaintiff must show "that a causal connection exists between the protected activity and the alleged adverse employment action.").

The Court therefore grants Defendants' motion to dismiss Spires' age- and race-based retaliation claims brought pursuant to the ADEA, the NYSHRL, and the NYCHRL.

## IV.    Plaintiff's Constructive Discharge Claim

Plaintiff also alleges that Defendants constructively discharged him, in violation of Title VII, § 1981, the ADEA, the NYSHRL, and the NYCHRL, by not promoting him for

discriminatory and retaliatory reasons.

Under Title VII, § 1981, the ADEA, and the NYSHRL, "an employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F. 3d at 229; *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) (Claims for constructive discharge "asserted under Title VII and the NYSHRL are analyzed pursuant to the same standard; therefore, analysis of identical claims brought by an individual under both of these laws can be performed in tandem.") (citing *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010)); *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720, 725 (2d Cir. 2010) (applying this analysis with regard to § 1981); *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 359-60 (2d Cir. 1993) (applying this analysis with regard to the ADEA).

Courts typically break constructive discharge claims into two parts: "the employer's intentional conduct and the intolerable level of the work conditions." *Petrosino*, 385 F.3d at 229. Regarding the first part, the employer must intend to create "intolerable workplace conditions." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000). "The second part of a constructive discharge claim requires the plaintiff to prove that an objectively reasonable person in the plaintiff's position would find her 'work conditions so intolerable as to compel resignation.'" *McCalla v. City of N.Y.*, 15 Civ. 8002 (LAK)(AJP), 2017 WL 3601182, at *68 (S.D.N.Y. Aug. 14, 2017) (quoting *Petrosino*, 385 F.3d at 230). This is a demanding standard, because "[c]onstructive discharge cases 'present a worse case harassment scenario, harassment ratcheted up to the breaking point.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147-48 (2004)).

With respect to a constructive discharge claim raised under the NYCHRL, New York courts have "not yet ruled as to [the] contours of" this standard. *Tulino v. Ali*, 15-cv-7106 (JSR), 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019). Nevertheless, courts in this Circuit have made clear that the plaintiff must prove, as with constructive discharge claims under Title VII, that "the employer deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign." *Id.* (internal quotation marks omitted).

According to Spires, the combination of MetLife's "discriminatory denial of [his] promotion to CPO," the "[r]etaliation for protected activity in June and December 2015," and the humiliation of being supervised by Corbett, "who was less qualified and less experienced than him," made working at MetLife so intolerable that he was constructively discharged in violation of these statutes. Pl.'s Opp. at 13-14; Am. Compl. at 11-14. The Court disagrees.

As courts in this Circuit have repeatedly made clear, with respect to Plaintiffs' federal and NYSHRL claim, denial of promotion by itself, even for discriminatory reasons, "does not constitute an intolerable work atmosphere amounting to a constructive discharge.'" *Loucar v. Boston Market Corp.*, 294 F. Supp. 2d 472, 482 (S.D.N.Y. 2003) (internal quotation marks omitted); *Borski v. Staten Island Rapid Transit*, 04-CV-3614 (SLT)(CLP), 2009 WL 10676064, at *8 (E.D.N.Y. Oct. 28, 2009) ("A denial of promotion, in itself, does not constitute intolerable work atmosphere amounting to constructive discharge under Title VII.") (internal quotation marks omitted); *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 WL 259937, at *21 (S.D.N.Y. Jan. 29, 2007) ("A failure to promote alone [] is insufficient to establish a claim of constructive discharge."); *Halbrook v. Reichold Chems.*, *Inc.*, 735 F. Supp. 121, 126 (S.D.N.Y. 1990) ("[I]t is well established that discriminatory denial of a promotion,

without more, cannot amount to constructive discharge.").

Moreover, and equally fatal to his claim under the state and federal statutes at issue here, Plaintiff nowhere alleges that MetLife or the individual Defendants *intentionally* or *deliberately* created negative working conditions, because of Spires' race, so as to compel him to resign. *See Gonzalez v. New York City Health and Hosp. Corp.*, 18-CV-2645 (JPO), 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019) (dismissing Plaintiff's complaint of constructive discharge under the federal law, the NYSHRL, and the NYCHRL because it "contains no specific allegation that [the company] or its supervisors acted deliberately in a way that would enable the Court to infer the intent to create an intolerable work environment for [the plaintiff]").

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's constructive discharge claim pursuant to Title VII, the ADEA, § 1981, the NYSHRL, and the NYCHRL.

## V.      Plaintiff's Pay Discrimination Claims

Finally, Plaintiff alleges that MetLife violated the Fair Pay Act and Title VII by paying a white female employee, Christin Williams, $5,000 more a year than him, even though she had similar job responsibilities to Plaintiff and Williams was allegedly less experienced and qualified than Spires. *See* Am. Compl. at 14-16.

To begin with, Plaintiff cannot succeed on his Fair Pay Act claim. This statute "'does not provide a separate theory of recovery, but instead establishes background rules for timing and damages in equal pay claims brought under other statutes.'" *Kpaka v. City of N.Y.*, No. 14-CV-6021 (RA), 2016 WL 4154891, at *7 (S.D.N.Y. Aug. 02, 2016) (quoting *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 n.2 (2d Cir. 2015) (citing 42 U.S.C. § 200e-5(e)(3)). As a result, the Court dismisses Plaintiff's claim under the Fair Pay Act.

The Court concludes that Plaintiff has stated a sufficient claim for pay discrimination

under Title VII, however. In order to establish a prima facie case of discriminatory disparate pay under this statute, a plaintiff must show: "(1) that he was a member of a protected class; (2) that he was paid less than similarly situated non-members of his protected class; and (3) evidence of discriminatory animus." *Quarless v. Bronx Lebanon-Hosp. Ctr.*, 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (citing *Belfi v. Pendergast*, 191 F.3d 129, 140 (2d Cir. 1999)). As with an employment discrimination claim, an employment discrimination plaintiff need not plead a prima facie case of discrimination. *See E.E.O.C.*, 768 F.3d at 254. Rather, in his pleadings, a "plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and []he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.

Here, Plaintiff has cleared this "*minimal* burden." *Id.* at 85 (emphasis in original). First, he has identified a white female, Christin Williams, who served as another director in his subdivision of the CEC department, and who purportedly performed similar tasks to himself. *See* Am. Compl. at 14-16; *see id.* ¶ 140 (listing the many job duties that he purportedly shared with Williams, such as advising management on privacy risks and on regulatory controls). Second, Spires alleges that MetLife paid Williams more than him because of both her sex and race. *See id.* at 16. This is all that he is required to plead at this time to give rise to a plausible inference of pay-based discrimination. *See Stern v. State Univ. of N.Y.*, 16-CV-5588 (NG)(LB), 2018 WL 6106755, at *2 (E.D.N.Y. Nov. 21, 2018) (The complaint "states with specificity the identity of a male comparator who is paid more than she is, and sets forth that she and the comparator work in supposedly substantially [similar] positions; this is more than a conclusory recitation of the elements of pay discrimination."); *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d at

432 (stating that the plaintiffs' pay discrimination allegations were adequate to state a claim where each plaintiff "(1) state[d] the amount of her base salary, (2) identifie[d] at least one male comparator, and (3) allege[d] that the comparator received a higher base salary"); *Simpri v. N.Y.C. Agency for Children's Servs.*, No. 00 Civ. 6712 (SAS), 2003 WL 169803, at *3 (S.D.N.Y. Jan. 23, 2003) (stating that the plaintiff's allegations were sufficient to avoid dismissal where he alleged having been paid less than a similarly situated co-worker because of his sex, race, and national origin).

In response, Defendants make three arguments. First, Defendants point out that Williams was hired two years before Plaintiff, and cite to *Jaafari v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 10 Civ. 4060 (AKH), 2011 WL 13128204, which, according to Defendants, stands for the proposition that Williams's seniority provides a "legitimate, non-discriminatory reason for differences in pay," Defs.' Rep. at 8, thereby defeating any inference of discrimination. In *Jaafari*, however, the district court considered whether the plaintiff had made a prima facie showing of employment discrimination, *id.* at *8, and did not apply the more permissive pleading standard articulated by the Second Circuit in *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) that courts are obliged to apply to such claims; *see supra.* at 21-22.

Second, Defendants contend that "Plaintiff has not alleged any other facts – other than the alleged pay difference itself – that Ms. Williams was allegedly paid $5,000 more per year *due to discriminatory animus*." Defs' Rep. at 9 (emphasis in original). But to provide a sufficient inference of discrimination at the motion to dismiss stage, a plaintiff must only specify "the identity of a [fe]male comparator who is paid more than []he is, and set[] forth that []he and the comparator work in supposedly substantially [the same] positions." *Stern*, 2018 WL 6106755, at

*2; *see also Barrett*, 39 F. Supp. 3d at 432; *Simpri*, 2003 WL 169803, at *3. This Plaintiff has done.

Finally, Defendants cite to various cases for the proposition that plaintiffs may not provide "broad generalizations" with respect to how they and their supposed comparators are similarly situated. Defs.' Rep. at 10 (quoting *EEOC*, 768 F.3d at 256). Defendants are correct that "broad generalizations" are insufficient to plausibly plead a pay discrimination claim. In the cases that Defendants cite to, however, the plaintiffs provided considerably less of what they and their purported comparators' job duties entailed than in the instant action. *See E.E.O.C.*, 768 F.3d at 256 (upholding dismissal of the plaintiffs' claims equal pay claim where the plaintiffs alleged in their complaint "only that the Port Authority paid its female nonsupervisory attorneys less than its male nonsupervisory attorneys 'for substantially equal work,' that these attorneys had 'the same job code,' and that the disparity in pay 'cannot be attributed to factors other than sex'"); *Wang,* 2016 WL 11469653, at *7 (dismissing the plaintiff's equal pay claim where plaintiff blanketly alleged that she had "comparable responsibilities and more seniority, work experience and/or d[id] the same or better quality work" than males paid more than her); *Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*, No. 08-CV-4569 (TCP), 2013 WL 2898135, at *4 (S.D.N.Y. June 13, 2013) (dismissing the plaintiff's equal pay claim where the plaintiff simply stated that her employer had paid "her and other female professors less wages than they paid to male employees although she performed equal, or superior, work and had equal or better qualifications and experience"). Here, by contrast, Spires has listed the specific job duties that he and this individual allegedly shared. *See* Am. Compl. ¶ 140.

At this early stage of the proceedings, Spires has therefore satisfied his minimal burden to

plead a claim for pay discrimination against MetLife under Title VII.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint is granted in part and denied in part.

Specifically:

(1) Plaintiff's race discrimination claim for failure to promote under Title VII, § 1981, the NYSHRL, and the NYCHRL against Defendant MetLife; his race discrimination claim for failure to promote under § 1981, the NYSHRL, and the NYCHRL against the Individual Defendants; and his Title VII pay discrimination claim against Defendant MetLife survive; and

(2) Plaintiff's race discrimination claim for failure to promote under Title VII against the Individual Defendants; his age discrimination claim for failure to promote under Title VII, the ADEA, the NYSHRL, and the NYCHRL against all Defendants; his age-based retaliation claim under the ADEA, the NYSHRL, and the NYCHRL against all Defendants; his race-based retaliation claim under Title VII, § 1981, the NYSHRL, and the NYCHRL against all Defendants; his constructive discharge claim under Title VII, § 1981, the ADEA, the NYSHRL, and the NYCHRL against all Defendants; and his Fair Pay Act claim against Defendant MetLife are dismissed.

The parties shall jointly submit a revised case management plan and scheduling order in this case by October 18, 2019.

---

[7] Plaintiff also alleges that Defendants' "decision to pay a black employee less than a white employee is part of a pattern and practice of treating black employees less favorably than white employees." Am. Compl. § 143. As with his race discrimination claim, *see supra.* at 8-9, Plaintiff's statement in support of his pattern or practice claim is entirely conclusory, however, and thus cannot "suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal citation omitted). As a result, the Court does not grant his Title VII pay discrimination cause of action on such grounds.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket 25, and to terminate Defendants' motion for oral argument pending at Docket 28 as moot.

SO ORDERED.

Dated:  September 18, 2019
             New York, New York

_____
Ronnie Abrams
United States District Judge